IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESSEX CRANE RENTAL CORPORATION, )<br>)<br>Plaintiff/Counter-Defendant, )<br>)<br>v. )<br>)<br>C.J. MAHAN CONSTRUCTION COMPANY, )<br>INC., and SAFECO INSURANCE COMPANY )<br>OF AMERICA, )<br>)<br>Defendants/Counter-Plaintiff. ) | 07 C 439<br><br>Judge George W. Lindberg |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Essex Crane Rental Corporation ("Essex") brought this diversity action against defendants C.J. Mahan Construction Company, Inc. ("Mahan") and Safeco Insurance Company of America ("Safeco"), alleging state law claims of breach of contract. Mahan counterclaimed, alleging breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act. Before the Court is Mahan's motion for summary judgment as to Essex's claims and as to two counts of its counterclaim against Essex; Essex's amended motion for summary judgment as to its claims against Mahan, and Mahan's counterclaim; and Safeco's motion for summary judgment as to Counts IX and X of Essex's complaint. For the reasons stated below, the motions are granted in part and denied in part.

**I.   Factual Background**

Essex leases equipment to construction businesses. During the time relevant to this action, Mahan was a contractor for the State of West Virginia on several bridge construction projects. Safeco executed a labor and material bond relating to Mahan's work on these bridge projects. In 2004 and 2005, Mahan entered into agreements with Essex, under which Mahan

agreed to lease three cranes from Essex ("Crane 1030," "Crane 3212," and "Crane 1093"), for use in Mahan's West Virginia bridge construction projects.

## II. Analysis

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Where, as here, the parties file cross-motions for summary judgment, the Court "considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration." Murray v. HSBC Auto Fin., Inc., No. 05 C 4040, 2006 WL 2861954, at *2 (N.D. Ill. Sept. 27, 2006).

As an initial matter, the Court notes that it previously struck all of the parties' initial summary judgment filings as deficient, and gave all of the parties an opportunity to file amended motions for summary judgment that comply with the Local Rules. Despite this second chance, the amended filings still exhibit significant departures from the requirements of the Local Rules. Since the parties have now had two opportunities to comply with the Local Rules, the Court will hold them strictly to the Rules' requirements, as discussed further below.

### A. Essex's Claims Relating to Crane 1030

#### 1. Count I

In Count I of its complaint, Essex alleges that Mahan breached the rental agreement for Crane 1030 by failing to pay $1,370.00 for service done on Crane 1030 by Essex on May 24, 2005. Under the rental agreement for Crane 1030, Essex is responsible for paying for expenses arising from the end-of-lease inspection, while Mahan must pay for repairs necessitated as a result of accidental or negligent damage during the lease. Mahan argues that it is entitled to summary judgment on Count I because the $1,370.00 bill was for an inspection performed by Essex at the time the lease ended, and not for repairs.

Essex's work order for the May 24, 2005 visit indicated that an Essex employee "checked out damage to Boomstop, looked for other damage to gantry, checked out boom, checked fluid levels of planetaries, inspection, checked out jobsite for other parts, dealt with customer." The box for "Inspection" is checked on the work order, while the box for "Repair" is not checked. Essex's invoice indicates that the technician spent 4.5 hours on "Inspection," and notes that "Tech arrived on site 05/24/2005 to perform inspection." A May 26, 2005 e-mail from Essex's Director of Operations stated that Essex had sent a technician to inspect the crane after being advised that the crane had been damaged, but that the technician was unable to perform a complete inspection because the crane had been "rigged down," or disassembled. Mahan returned the crane in May 2005.

Essex has offered no evidence that its technician performed repairs on Crane 1030 during his May 24, 2005 visit, rather than an inspection. Accordingly, Mahan's motion for summary judgment as to Count I of Essex's complaint is granted, and Essex's motion is denied.

### 2. Count II

In Count II of its complaint, Essex alleges that Mahan failed to pay $23,877.95 for repairs to Crane 1030 that the crane required at the time Mahan returned it to Essex. Mahan concedes that it is responsible for paying for repairs made to the boom stop, since the damage to the boom stop was apparent during the May 24, 2005 inspection. However, Mahan contends that any other damage to Crane 1030 occurred after Mahan returned the Crane to Essex. Mahan also argues that Essex was not entitled to repair the crane itself, and that in any event, Essex failed to provide the requisite notice of damage to the crane.

The rental agreement for Crane 1030 requires Mahan to maintain the crane, and to return it to Essex at the end of the lease period "in good operating condition, well greased, oiled, cleaned and repaired." Under the rental agreement, Mahan is responsible for paying for repairs necessitated by Mahan's accidental or negligent damage to the cranes during the lease period, while Essex is responsible for repairs related to normal wear. The rental agreement provides that Essex "shall make an inspection upon return of the Equipment, such inspection to be at [Essex's] expense. Any loss or damage to Equipment shall be listed and notice thereof supplied to [Mahan] within thirty (30) days after return of the Equipment to [Essex]." The rental agreement also provides that if Mahan violated any term of the agreement, Essex may, at its discretion, "recover full damages for any injuries to the Equipment, . . . all expenses for service, repair, and cleaning of the Equipment to restore it to good serviceable condition."

Mahan first contends that it is not responsible for paying for the repairs made by Essex at the end of the lease term, because only Mahan can repair any loss or damage to Crane 1030. Although Mahan claims that "[t]he lease is clear that repairs performed by Essex, or at its sole

discretion, are not repairs of loss or damage that are the responsibility of Mahan," Mahan cites only testimony by Essex's regional operations manager to that effect. However, under the provisions noted above, the rental agreement allows Essex to recover expenses incurred in repairing Crane 1030

The parties have not offered evidence as to the precise date Mahan returned Crane 1030 to Essex. However, it would appear that Mahan returned it between May 25, 2005 and May 31, 2005, since it had not been returned as of the May 24, 2005 inspection, and the parties agree that the crane was returned in May 2005. On June 15, 2005, Essex's Director of Operations sent an e-mail to Mahan's Vice President of Operations, listing certain loss and damage to Crane 1030. Essex sent Mahan an invoice dated September 1, 2005, for repairs in the amount of $23,877.95. The invoice included items that were not listed in Essex's June 15, 2005 e-mail. In addition, Essex charged Mahan for markup for parts and labor, which Essex concedes was not part of the rental agreement.

Mahan argues that the damage other than existing damage to the boom stop occurred after it returned Crane 1030 to Essex. In support of this argument, Mahan offers evidence that during the May 24, 2005 inspection, when Crane 1030 was rigged down (and thus inoperable), the Essex technician noted on the work order that the crane's hour meter read 8456 hours. A July 1, 2005 inspection report noted that the crane's hour meter read 8495 hours. Mahan argues that the damage necessarily occurred after Mahan returned the crane, because the May 24, 2005 inspection did not reveal any damage other than to the boom stop.

The Court finds that Mahan is not responsible for expenses relating to any damage not disclosed in the June 15, 2005 e-mail, since any additional damage was not disclosed within

5

thirty days after Mahan returned the crane, as required under the rental agreement. However, Mahan has not offered sufficient evidence to show that it is not responsible for expenses relating to damage listed in the June 15, 2005 e-mail. Nor is the Court persuaded by Mahan's reliance on the May 24, 2005 inspection as revealing only boom stop damage, since Mahan itself cites an Essex e-mail stating that a complete inspection was not possible on May 24, 2005 because the crane was rigged down. Mahan's motion for summary judgment is granted as to the part of Count II relating to damage not identified in Essex's June 15, 2005 e-mail and as to charges for markup; it is denied as to the remaining charges.

The Court turns to Essex's motion for summary judgment as to Count II. First, the Court notes that Essex has failed to offer evidence supported by citations to the record that Mahan failed to pay for the repairs at issue, a basic issue in a breach of contract claim. In addition, Essex only offers evidence that a July 1, 2005 inspection revealed that repairs to Crane 1030 were needed. However, Essex offers no evidence establishing when Mahan returned Crane 1030, or showing that it notified Mahan of any of the damages listed in the July 1, 2005 report within thirty days after Mahan returned Crane 1030, as required by the rental agreement. Because Essex has failed to establish that it is entitled to judgment as a matter of law as to Count II of its complaint, its motion for summary judgment as to Count II is denied.

      **B.**     **Essex's Claims Relating to Crane 3212**

          **1.**     **Count III**

In Count III of its complaint, Essex claims that Mahan breached its rental agreement relating to Crane 3212 by failing to pay $16,960.00 in rent for the period from November 27, 2005 through January 26, 2006. Mahan seeks summary judgment as to Count III on the bases

that the rental period ended on November 1, 2005, Mahan placed the crane on "Hold, Store, and Load Out" status, and stopped using the crane on December 2, 2005.

The rental agreement for Crane 3212 provides for a minimum rental period of eight consecutive months, with the rental period beginning "as a bill of lading approximately 3/1/05," and ending when the equipment was returned, as long as the minimum rental period was met. The agreement further provides that at the end of use, Mahan could elect to "insure and Hold, Store, and Load-Out (HSLO) the Equipment at the jobsite until the next rental, in lieu of transportation and charges."

Essex charged Mahan for rent on Crane 3212 beginning May 31, 2005. On October 20, 2005, Mahan notified Essex that Mahan would be terminating the lease on Crane 3212 on November 9, 2005. Mahan placed Crane 3212 on "Hold, Store, and Load Out" status, and returned it to Essex by January 6, 2006. Essex invoiced Mahan for rent from November 27, 2005 through January 27, 2006. Essex also invoiced its next customer for the rent of Crane 3212 during some of this time period.

Mahan contends that the minimum eight-month rental period began on March 1, 2005. According to Mahan, the fact that Essex did not charge rent for March and April 2005 has no bearing on the start date. Essex takes the position that the lease began when Essex began charging rent, and that it is thus entitled to receive rent for the eight months following May 2005, through the end of January 2006.

The Court concludes that an issue of fact exists as to when the rental period for Crane 3212 began. Although Essex offers evidence that Mahan began using Crane 3212 on May 31, 2005, neither party has offered evidence establishing when a bill of lading issued. Evidence that

Essex did not bill Mahan for March and April 2005 suggests that the rental period may have started later than March 1, 2005, which would still be consistent with the "approximately" March 1, 2005 language in the agreement. Mahan's and Essex's motions for summary judgment as to Count III are denied.

### 2. Count IV

In Count IV of its complaint, Essex claims that Mahan breached the rental agreement for Crane 3212 by failing to pay $5,677.50 for service and repair work performed by Essex technicians on August 2, 2005 and in October 2005.[1] Mahan contends that it was not responsible for paying for the August 2, 2005 repairs, because those repairs were needed due to normal wear. Mahan contends that it was not responsible for paying for the October 2005 repairs, because the repair was for normal wear, the invoice included an improper charge for travel, and the invoice was issued nearly three months after the work was done.

The Court starts with Essex's motion for summary judgment as to the portion of Count IV relating to the August 2, 2005 visit. The rental agreement for Crane 3212 provides that Essex is responsible for repair costs and parts related to normal wear, as long as Mahan operated and maintained the crane in accordance with the manufacturer's specifications. In support of its motion for summary judgment, Essex offers testimony by one of its employees that the damage repaired on August 2, 2005 was due to Mahan's failure to adequately lubricate the equipment. However, Mahan disputes this evidence by noting the employee's concession that he did not inspect the part of the equipment at issue, and by offering a Mahan employee's testimony that the

---

[1] Although the complaint alleges that Essex made these repairs on December 30, 2005, this claim appears to be based on work done in October 2005, which was invoiced on December 30, 2005. For the sake of clarity, the Court will refer to these repairs as the October 2005 repairs.

part was properly lubricated. Since a factual dispute exists under Essex's motion relating to the August 2, 2005 repair, Essex's motion for summary judgment as to that portion of Count IV is denied.

There is no factual dispute under Mahan's motion for summary judgment relating to the same repair work, however, and as noted above, the Court must consider the parties' motions separately. In response to Mahan's motion, Essex does not dispute that its work order for the August 2, 2005 repairs stated that "[t]hese bearings are worn out, not due to lack of lubrication, rather old age." Nor does Essex dispute that its invoice for the August 2, 2005 repairs stated that the repairs were done because a gantry bearing was "worn out." Although Essex argues in response to Mahan' motion that a supervisor believed the damage to have been caused by lack of lubrication, Essex does not offer any evidence to that effect in its statement of additional facts. Therefore, the Court finds that Essex has failed to dispute Mahan's evidence that the August 2, 2005 repairs were for normal wear. See LR56.1(b)(3)(C); Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (warning that Rule 56.1(b)(3) "provides the *only* acceptable means of . . . presenting additional facts" and that providing additional facts in a response memorandum "is insufficient to put those facts before the Court"). Mahan's motion for summary judgment as to the portion of Count IV relating to the August 2, 2005 repairs is granted.

The Court turns to Essex's claim relating to the October 2005 repairs to Crane 3212. In support of its motion for summary judgment as to this portion of Count IV, Essex argues that Mahan is obligated to pay for these repairs necessitated by what Essex describes as "difficulties" that Mahan was experiencing with the steering and tracks of Crane 3212. Essex only offers evidence that it sent a technician "to inspect and repair damages to [Crane 3212]" at Mahan's

request, and that it issued Mahan an invoice for the costs incurred in this repair work. Essex offers no evidence as to whether the damage was attributable to Mahan. Moreover, as with its motion as to Count II, Essex fails to properly support its statement of fact that Mahan failed to pay for the work. Essex's motion for summary judgment as to the portion of Count IV relating to the October 2005 repairs is denied.

In support of its motion for summary judgment as to this portion of Count IV, Mahan contends that the repair work done in October 2005 was due to normal wear, and that Essex therefore is responsible for it. In support of this contention, Mahan observes that Essex's work order for the visit indicated that a clutch slider was malfunctioning, and argues that this is evidence of normal wear. However, Mahan offers no evidence showing why such a malfunction was a result of normal wear, rather than accidental or negligent damage. In addition, as Mahan acknowledges, Essex's invoice for the repair work stated that "operator was engauaging [sic] doggs in error." Although neither party explains what this means, the indication that a Mahan operator took action in error suggests that Mahan was responsible for the damage.

Nor is the Court persuaded by Mahan's argument that it is entitled to summary judgment as to the part of Count IV relating to the October 2005 repairs based on the length of time it took Essex to issue an invoice for the work. Although the rental agreement requires Essex to notify Mahan of any damage or loss to Crane 3212 within thirty days of its return, the lease is silent as to when an invoice must issue.

The Court finds that Mahan's argument regarding certain of the travel expenses invoiced for the October 2005 visit has merit, however. It is undisputed that some of the travel costs included in Essex's invoice were for its technician's return from training in Wisconsin to Essex's

service center in Pennsylvania, prior to the technician's travel from Essex to Mahan's job site in West Virginia. These travel expenses from Wisconsin to Pennsylvania did not relate to the repairs to Crane 3212, and cannot be passed along to Mahan, even if Mahan is ultimately determined to be responsible for the repairs. Mahan's motion for summary judgment as to the portion of Count IV relating to these travel expenses is granted. Mahan's motion as to the portion of Count IV relating to the remaining expenses incurred during the October 2005 repair visit is denied.

### 3. Count V

In Count V of its complaint, Essex claims that Mahan breached the rental agreement for Crane 3212 by failing to pay for $7,295.25 in repairs made when Mahan returned the crane to Essex. Mahan argues that it is entitled to summary judgment as to Count V because Essex failed to provide Mahan with notice of the repairs within thirty days after Mahan returned the crane to Essex. Mahan also argues that Essex improperly included charges for the reassembly of Crane 3212 for Essex's next customer.

The rental agreement for Crane 3212 provides that Essex must inspect the crane upon its return, and "[a]ny loss or damage to [Crane 3212] shall be listed and notice thereof supplied to [Mahan]" within thirty days of the return of the crane. Mahan returned Crane 3212 to Essex on January 6, 2006. In an invoice dated January 11, 2006, Essex billed Mahan $7,295.25 for "Rental End Repairs" on the crane, but did not list what damage Essex repaired. Essex now concedes that the $3,766.25 assembly charge included in this invoice was improper.

Since Essex did not provide Mahan with adequate notice of the damage to Crane 3212 within thirty days after Mahan returned it, Mahan's motion for summary judgment as to Count V

is granted, and Essex's motion is denied.

### 4.     Count X

In Count X of its complaint, Essex claims that Safeco breached its contract bond for Mahan's bridge project by failing to reimburse Essex $56,770.45.  On December 8, 2005, Essex filed a bond claim with Safeco.  The parties appear to agree that this bond claim relates to Essex's claims for repair expenses for Crane 3212 incurred on August 2, 2005.  Although the parties agree that this bond claim also relates to some portion of rent for Crane 3212, it is unclear whether the claimed rent is identical to that discussed relating to Count III.

Safeco does not dispute that under its contract bonds issued for Mahan's bridge projects, it is liable to Essex to the extent Mahan is liable to Essex.[2]  In support of its motion for summary judgment as to Count X, Safeco echoes Mahan's arguments relating to Counts III and IV, and Essex adopts its arguments relating to those counts.

For the same reasons outlined in its ruling as to Count III, the Court finds that an issue of fact exists as to when the rental period for Crane 3212 began.  For the same reasons outlined in its ruling as the portion of Count IV relating to Essex's August 2, 2005 repair claim, the Court finds that Essex failed to dispute evidence that the August 2, 2005 repairs were for normal wear.  Safeco's motion for summary judgment accordingly is granted as to the portion of the motion relating to the August 2, 2005 repairs, and denied as to the portion relating to rent on Crane 3212.

---

[2]  In its reply brief, Safeco argues for the first time that Essex's bond claims are precluded for other reasons as well, such as that Essex's claims seek payment from Safeco for rent accruing before and after Mahan's actual use of the cranes, and that the alleged repairs were not substantially consumed in the performance of Mahan's subject projects.  Arguments raised for the first time in reply are waived, and the Court accordingly disregards them.  See James v. Sheahan, 137 F.3d 1003, 1008 (7th Cir. 1998).

### C. Essex's Claims Relating to Crane 1093

#### 1. Count VI

Essex has voluntarily dismissed Count VI of its complaint. Accordingly, Mahan's motion for summary judgment as to that count is denied as moot.

#### 2. Counts VII and VIII

In Count VII of its complaint, Essex claims that Mahan breached the rental agreement for Crane 1093 by failing to pay $26,217.34 in rent on the crane for the period from September 21, 2005 through October 18, 2005. In Count VIII, Essex claims that Mahan breached the rental agreement for Crane 1093 by failing to pay for $6,703.12 in repairs made after Mahan returned the crane to Essex. Mahan contends that it was not obligated to pay rent after it placed Crane 1093 on "Hold, Store, and Load Out" status on August 26, 2005. In addition, Mahan argues that it is not responsible for either the cost of the repairs, or for paying rent while the repairs were being made, because Essex failed to provide timely notice of the damage.

The rental agreement for Crane 1093 provides that the rental period ended when the crane was returned to Essex. However, if the crane was "not serviceable" as a result of Mahan's accidental or negligent damage, the rental continued until the crane was restored to serviceable condition, and Mahan must pay all costs for such repairs. As in the rental agreements for Cranes 1030 and 3212, the rental agreement for Crane 1093 provides that Essex must inspect the crane upon its return, and notify Mahan of any loss or damage within thirty days after the crane is returned. The agreement cannot be modified except in writing, signed by the principals executing the original agreement or their successors.

The parties agree that Crane 1093 was returned to Essex's yard on October 8, 2005.

13

Mahan contends that it was not obligated to pay rent on Crane 1093 after August 26, 2005 because it notified Essex by fax on July 29, 2005 that it was terminating the lease of Crane 1093 as of August 26, 2005, and told Essex that Mahan would "hold unit until you need it." In support of its contention that it was not responsible for rental payments after August 26, 2005, Mahan offers only the purported July 29, 2005 fax, without any authenticating testimony.

More importantly, the rental agreement for Crane 1093 does not contain a provision allowing Mahan to "Hold, Store, and Load Out" the equipment. Mahan does not offer any documentation showing that Essex agreed in writing to modify the rental agreement to allow the rental period to end before the crane was returned to Essex's yard. Mahan has not established that it was entitled to place the crane on "Hold, Store, and Load Out" status and stop paying rent as of August 26, 2005. The Court finds that Mahan was obligated to pay rent at least through October 8, 2005, when the crane was returned.

The Court next evaluates whether Mahan was responsible for the damage repaired after Mahan returned the crane to Essex. Essex does not dispute that it did not notify Mahan of any end-of-rent repairs to Crane 1093 until December 16, 2005. Since that date is more than thirty days after the crane was returned, Mahan is not responsible for either the cost of the repairs or for paying rent after October 8, 2005, while the repairs were being completed. Mahan's motion for summary judgment is granted as to Count VIII, and granted in part and denied in part as to Count VII. Essex's motion for summary judgment is denied as to Count VIII, and granted in part and denied in part as to Count VII.

### 3. Count IX

In Count IX of its complaint, Essex claims that Safeco breached its contract bond issued

for Mahan's bridge project by failing to reimburse Essex $55,180.70.  Essex now concedes that it is only seeking $26,217.34 in Count IX, for unpaid rent on Crane 1093 for the period from September 21, 2005 through October 18, 2005.

As noted above, Safeco does not dispute that it is liable to Essex to the extent that Mahan is liable to Essex.  In support of its summary judgment motion as to Count IX, Safeco adopts Mahan's arguments relating to Count VII, and Essex adopts its own arguments as to that count.  For the same reasons outlined in its ruling as to Count VII, the Court finds that Mahan was obligated to pay rent on Crane 1093 for the period from September 21, 2005 until the crane was returned on October 8, 2005, but not for the period after the crane was returned.  As Mahan's surety, Safeco is obligated to the same extent as Mahan.  Safeco's motion for summary judgment as to Count IX is granted in part and denied in part.

### D.     Mahan's Counterclaim Against Essex

Mahan's three-count counterclaim alleges breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud and Deceptive Practices Act against Essex.

#### 1.     Count I

In Count I of its counterclaim, Mahan alleges that Essex breached the rental agreement for Crane 1093 by refusing to reimburse Mahan for repairs Mahan made to Crane 1093's air conditioning system, starting system, and throttle control system in July and August 2005, totaling $7,781.33.  Mahan also alleges than Essex breached the rental agreement for Crane 1030 by failing to refund rental fees in the amount of $9,133.63 for Crane 1030.

Essex offers no evidence relating to Mahan's claim that Essex failed to refund rental fees for Crane 1030.  Nor does Essex offer any admissible evidence relating to Mahan's claim that

Essex failed to reimburse it for repairs made to Crane 1093. In paragraphs 73 and 74 of its statement of facts, Essex states that Mahan was responsible for any repairs made to Crane 1093 during the lease period, and that Mahan failed to notify Essex of damage that led to the repairs. However, Essex failed to provide any citation to the record to support these statements of fact, as required by Local Rule 56.1. Accordingly, these statements are stricken. Essex's motion for summary judgment is denied as to Count I of Mahan's counterclaim.

Mahan makes no argument in support of its motion for summary judgment as to the portion of Count I relating to repair charges on Crane 1093 claimed in Mahan's Invoices 0001, 002, and 003. Mahan's motion is denied as to these charges.

The Court turns to the portion of Count I relating to the claim for a refund of certain rental fees for Crane 1030. In response to Mahan's motion, Essex does not dispute that it issued Mahan a $9,133.63 credit memo, or that it has not refunded Mahan this amount. Instead, Essex merely argues that the $9,133.63 should offset any amounts Mahan still owes Essex. Since there is no dispute as to any material fact, Mahan's motion for summary judgment as to this portion of Count I is granted.

### 2. Count II

In Count II, Mahan alleges that Essex was unjustly enriched by the same conduct that forms the basis of its breach of contract claim. A plaintiff cannot recover for unjust enrichment when a contract governs the relationship between the parties. First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir. 1985) (citing LaThrop v. Bell Fed.

Sav. & Loan Ass'n, 370 N.E.2d 188, 195 (Ill. 1977)).[3] Because the rental agreements govern the parties' relationship in this case, Essex's motion for summary judgment as to Count II of Mahan's counterclaim is granted.

### 3. Count III

In Count III, Mahan claims that Essex made various deceptive statements, in an effort to defraud it. These statements include invoices containing charges for which Mahan contends it is not responsible, a credit adjusting the end rental date for one of the cranes, Essex's bond claim filed with Safeco, Essex's refusal to provide Mahan with the breakdown of charges included in certain invoices until after this case was filed, and various e-mails relating to the rental agreements and repairs performed on the cranes. Essex moves for summary judgment as to Count III on the basis that the alleged misconduct does not implicate consumer protection concerns.

The Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") prohibits the use of deceptive acts or practices in the conduct of trade or commerce. 815 ILCS 505/2. The ICFA is "primarily concerned with protecting consumers." AGFA Corp. v. Wagner Printing Co., No. 02 C 2400, 2002 WL 1559663, at *2 (N.D. Ill. July 10, 2002). Under the ICFA, a "consumer" is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Where, as here, a dispute arises between two businesses that are not

---

[3] The parties do not raise any choice of law issues, or argue that the law of any state other than Illinois differs in any meaningful way from Illinois law. The rental agreements provide that Illinois law, or alternatively the law of five other states, governs. Thus, the Court looks to Illinois law.

consumers of each other's goods, the plaintiff must show that the alleged misconduct "involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." See AGFA Corp., 2002 WL 1559663, at *2. Relief under the ICFA is not warranted where the plaintiff's "allegations are, at their core, a claim for breach of contract." Id. (citing Nilsson v. NBD Bank of Ill., 731 N.E.2d 774, 785 (Ill. App. Ct. 1999)); see also Bankier v. First Fed. Sav. & Loan Ass'n, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992) ("Here, [the parties] merely disagree on the interpretation of the contract between them . . . . Since this is a simple breach of contract dispute, the [ICFA] does not apply.").

Mahan has moved to strike certain paragraphs of Essex's statement of material facts relating to Count III of Mahan's counterclaim, on the basis that they do not state facts, and because they are not supported by citations to the record. Mahan's arguments are well-founded, and the Court strikes paragraphs 76, 77, and 79. However, even without these paragraphs, Essex has met its initial burden of demonstrating that the alleged misconduct does not implicate consumer protection concerns, because properly supported facts indicate that the dispute between Essex and Mahan is a contract dispute between businesses. Thus, the burden shifts to Mahan to offer specific facts demonstrating that a material dispute exists.

Mahan has offered no facts or argument demonstrating that Essex's alleged misconduct implicates consumer protection concerns. Instead, Mahan only argues that summary judgment on Count III should be denied for the same reasons as outlined in this Court's previous denial of Essex's motion to dismiss. Mahan's argument is misplaced. Unlike a motion to dismiss, summary judgment is the "put up or shut up" moment in a lawsuit, and the nonmovant must do more than merely rest on its pleadings. Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th

18

Cir. 2003); Liu v. T & H Mach., Inc., 191 F.3d 790, 794-95 (7th Cir. 1999).  Essex's motion for summary judgment as to Count III of Mahan's counterclaim is granted.

**III.     Conclusion**

Count VI of Essex's complaint is dismissed.  Mahan's motion for summary judgment is granted as to Counts I, V, and VIII of Essex's complaint; granted in part and denied in part as to Counts II, IV, and VII of Essex's complaint; and denied as to Counts III and VI of Essex's complaint.  Mahan's motion for summary judgment is granted in part and denied in part as to Count I of its counterclaim, and denied as to Count II of its counterclaim.  Essex's motion for summary judgment is granted in part and denied in part as to Count VII of Essex's complaint; and denied as to Counts I-V, and VIII of its complaint.  Essex's motion for summary judgment is granted as to Counts II and III of Mahan's counterclaim, and denied as to Count I of Mahan's counterclaim.  Safeco's motion for summary judgment is granted in part and denied in part as to Counts IX and X of Essex's complaint.

Remaining in the case are the following claims: (1) the portion of Count II of Essex's complaint relating to damage listed in Essex's June 15, 2005 e-mail; (2) Count III of Essex's complaint; (3) the portion of Count IV of Essex's complaint relating to October 2005 repairs; (4) the portion of Count IX relating to rent owed on Crane 1093 for the period until the crane was returned on October 8, 2008; (5) the portion of Count X of Essex's complaint relating to rent on Crane 3212; and (6) the portion of Count I of Mahan's counterclaim relating to repairs to Crane 1093 in July and August 2005.

**ORDERED:**  Defendant/counter-plaintiff C.J. Mahan Construction Company, Inc.'s motion for summary judgment [128] is granted in part and denied in part.  Plaintiff/counter-

defendant Essex Crane Rental Corporation's amended motion for summary judgment [116] is granted in part and denied in part. Safeco Insurance Company of America's motion for summary judgment [123] is granted in part and denied in part. Count VI of the complaint is dismissed.

ENTER:

_____
George W. Lindberg
Senior U.S. District Judge

DATED:   August 25, 2008